**Sue FULSON, Dr. Sandra Walker, William DeFoor, Jr., Paul B. Ballard, James P. Bonadonna, Fred Heine, Dr. Julia H. Hill, Rev. Robert Stephens and Carl Struby, as Members of the Board of Directors of the School District of Kansas City, Missouri, Appellants,**

v.

**The KANSAS CITY STAR COMPANY, Respondent.**

**No. WD 44248.**

Missouri Court of Appeals, Western District.

Oct. 1, 1991.

Allan V. Hallquist, Shirley W. Keeler, Kansas City, for appellants.

W.H. Bates, Jonathan R. Haden, John E. Tyler, Kansas City, for respondent.

Before TURNAGE, P.J., and KENNEDY and BRECKENRIDGE, JJ.

KENNEDY, Judge.

This is a suit for a declaratory judgment. The members of the Board of Directors of the Kansas City, Missouri, School District filed the present suit against the Kansas City Star Company for a declaratory judgment, the aim of which was to resolve a

dispute between the school board and the newspaper as to the newspaper's access to records and meetings of the district under the Sunshine Law, section 610.010–.030, RSMo, 1986. The defendant newspaper filed an answer and a "counter-request" for declaratory judgment.

The school board has denied newspaper access to various documents on the ground that such documents were district records, rather than school board records, because, as the school board explained, they were neither generated nor retained by the board. The board maintains that it, the school board, is the "public governmental body" to which the Sunshine Law applies, and not the district. Then they say that the records of the board are only those which are generated or retained by the board.

On the ground they are not "board records" but are "district records", the board (according to the Star's brief) has denied the Star's access to:

1. A service contract between the KCMSD and Donna Ziegenhorn, who was hired in 1988 to help prepare for the opening of the 1988–89 school year.

2. Friday Reports–Weekly status reports of the district's activities which former Superintendent of Schools George Garcia was required by contract to provide to the school board.

3. Reports concerning the regular activities of the KCMSD communications office.

4. Reports and records concerning security incidents and crimes reported or committed on the premises of district offices or schools including thefts of school funds and property.

5. Bi-monthly meetings and the monthly report of the Project Management Team, a joint venture of J.E. Dunn Construction Company and The Allied Companies. The PMT has contracted with the school district to provide services in connection with the court ordered capital improvements program. The monthly report details the progress of district construction projects and includes matters such as school closings, school site selections, and the transfer of students between schools.

6. Reports regarding asbestos inspections of district schools.

7. The district's plan for hiring magnet school students [sic].

8. Regular audit reports, prepared by the district's internal auditor, regarding each school's activity fund.

9. Expense reports of district administrators and employees.

The trial court was not asked to determine whether the Star was entitled to access to any of those records, and we are not informed whether there is a presently existing dispute between the parties with respect to any of them.

The school board and the Star have entered into a stipulation defining the issues presented by the case, upon which the court was asked to enter a declaratory judgment. The issues are as follows:

1. Is the School District of Kansas City, Missouri ("KCMSD"), a "public governmental body" as that term is defined in RSMo § 610.010(2)?

2. If the KCMSD is not a public governmental body, may the board of directors of KCMSD properly invoke the litigation exemption under § 610.021(1) to close meetings, records, or votes to the extent they relate to litigation to which the KCMSD, but not its board of directors, is a party?
(a) May the board of directors of KCMSD properly invoke the litigation exemption to close meetings, records, or votes relating to the desegregation litigation, to which the KCMSD, but not its board of directors, is a party? Does the desegregation litigation "involve" the board of directors, as opposed to the KCMSD, as that term is used in § 610.021(1)?

3. If the KCMSD is not a public governmental body, may the board of directors of KCMSD properly invoke the real estate exemption under § 610.-021(2) to close meetings, records, or votes to the extent they relate to "leas-

ing, purchase or sale of real estate" by the KCMSD as opposed to its board of directors?

4. If the KCMSD is not a public governmental body, may the board of directors of KCMSD properly invoke the personnel exemption under § 610.-021(3) to close meetings, records, or votes to the extent they relate to the "hiring, firing, disciplining or promoting" of any employee of the KSMSD, as opposed to employees of its board of directors?

5. What is the temporal scope of the litigation exemption under § 610.-021(1)?

(a) When does "litigation" end for purposes of § 610.021(1)?

(b) In particular, when does *Jenkins v. State of Missouri, et al.,* (the desegregation litigation) end for purposes of § 610.021(1)?

6. When may the board of directors of KCMSD, pursuant to the litigation exemption, § 610.021(1), close meetings, records, and votes pertaining to court-ordered remedies in the desegregation litigation?

7. When may the board of directors of KCMSD, pursuant to the litigation exemption, § 610.021(1), close meetings, records, and votes pertaining to the desegregation budget?

8. May the board of directors properly close reports and memoranda, such as Friday Reports, drafted by the superintendent of schools of other KCMSD administrators and sent to each member of the board, where those reports and memoranda are not reviewed and discussed at board meetings?

With respect to Issues 5, 6 and 7, the trial judge declined to make a declaration, holding there were "insufficient facts provided to resolve these issues." Neither party complains of the trial court's ruling.

The trial judge's reasons for withholding declaratory judgment on Issues 5, 6 and 7 lead also to the conclusion that there is no justiciable controversy upon which the court may rule with respect to the other issues presented.

■ This case does not present the kind of concrete factual situation upon which a declaratory judgment may issue. It calls instead for abstract declarations of law. Courts do not make abstract declarations of law. *See Commonwealth Ins. Agency, Inc. v. Arnold,* 389 S.W.2d 803 (Mo.1965); *Nations v. Ramsey,* 387 S.W.2d 276 (Mo. App.1965). Courts decide concrete cases. E. Borchard, *Declaratory Judgments* 40, 44 (1941) (citing United States v. West Virginia, 295 U.S. 463 (1935)). There must be a specific factual matrix for our declarations of law, for our decisions are anchored in the facts under consideration and are limited by those facts.

In other cases in which this and other courts have construed the Sunshine Law, there have been specific documents which the public governmental body wished not to disclose, and which the newspaper, or some member of the public, wished to gain access to. In *Missouri Protection and Advocacy Services v. Allan,* 787 S.W.2d 291 (Mo.App.1990) (mandamus), the document was the preliminary report of a review of Missouri's educational programs for handicapped children, furnished to Missouri Department of Elementary and Secondary Education by a division of the U.S. Department of Education. In *Oregon County R–IV School District v. LeMon,* 739 S.W.2d 553 (Mo.App.1987) (declaratory judgment), the records in dispute were a complete list of the school's students, with their addresses and telephone numbers. In *St. Louis v. Bridgeton,* 806 S.W.2d 717 (Mo.App.1991) (declaratory judgment), the documents sought were records of prices paid by St. Louis for parcels of real estate acquired for airport noise reduction purposes. In *Librach v. Cooper,* 778 S.W.2d 351 (Mo.App. 1989) (injunction), the plaintiff sought records pertaining to severance pay of former superintendent of school district, especially the "Severance Agreement". In *Charlier v. Corum,* 774 S.W.2d 518 (Mo. App.1989) (mandamus), plaintiff sought records indicating whether an arrest warrant had been issued for a specific individual. In *Tribune Publishing Company v. Curators of the University of Missouri,*

661 S.W.2d 575 (Mo.App.1983) (declaratory judgment and injunction), the plaintiff sought internal audit reports; a hospital task-force report; and medical library feasibility study.[1]

A declaratory judgment should have a conclusive effect and should lay to rest the parties' controversy. Mo.R.Civ.Pro. 87.07; *Wentzville Public School Dist. v. Paulson,* 699 S.W.2d 132 (Mo.App.1985). Without a concrete case to operate upon, a declaratory judgment cannot have that effect.

Let us suppose we should declare that the school district is, as the Star contends and as the trial court judgment declared, a "public governmental body". Such a judgment could have no conclusive effect with reference to any particular document which was later withheld from the newspaper's inspection. If the Star returned to the court for further relief based on the declaratory judgment, as provided by section 527.080, RSMo, 1986, and Rule 87.10, the judgment's declaration that the school district was a "public governmental body" would furnish only part of its case. Whether the disputed document was a "public record" would remain undecided, and whether it was entitled to closure under section 610.021. These issues could be decided only upon an evidentiary hearing. The declaratory judgment would be found to be impotent and to have had no conclusive effect.

■ In the absence of a concrete case upon which the court's decree can have a conclusive effect, there is no justiciable controversy. The absence of a justiciable controversy is said in some of our cases to deprive the court of "jurisdiction" to enter a declaratory judgment. *See Wentzville Public School Dist. v. Paulson,* 699 S.W.2d 132 (Mo.App.1985); *Jackson v. Heritage*

*Sav. & Loan,* 639 S.W.2d 142, 144 (Mo.App. 1982). It is perhaps more nearly correct to say that a petition for declaratory judgment is addressed to the court's discretion, and that it is an abuse of discretion to undertake to issue a declaratory judgment without a justiciable controversy to act upon. *See Joplin v. Jasper County,* 349 Mo. 441, 161 S.W.2d 411, 414 (1942).

We have determined to remand this case to the trial court for further proceedings. It is possible that there are present and ongoing controversies between the newspaper and the school board over specific records and meetings. The pleadings can be amended to state with specificity what documents are now being withheld which the newspaper demands to see, and what meetings are closed which the newspaper demands to attend. Evidence can then be adduced which will make an ample record upon which the court can render a declaratory judgment and can give such supplemental relief as may be called for.

In a case submitted upon an agreed statement of facts the Supreme Court of the United States held that, in a case involving "delicate problems", whose solution was bound to have "far-reaching import," a declaratory judgment should rest on an "adequate and full-bodied record." *Public Affairs Assoc., Inc. v. Rickover,* 369 U.S. 111, 82 S.Ct. 580, 7 L.Ed.2d 604 (1962). The Court held that the lower court should not have entered a declaratory judgment upon the agreed statement of facts before it. The Court noted: "None of the undetailed and loose, if not ambiguous, statements in the Agreed Statement of Facts was subject to the safeguards of critical probing through examination and cross-examination." *Id.* 82 S.Ct. at 582. These observations are useful in any declaratory

---

1. Other cases illustrating the need for specifically described documents or meetings for a declaratory judgment to operate upon: *City of St. Louis v. Bridgeton,* 806 S.W.2d 717 (Mo.App. 1991) (declaratory judgment) records of price City paid for certain parcels of real estate; *Golden Rule Ins. Co. v. Crist,* 766 S.W.2d 637 (Mo. banc 1989) (administrative appeal) market conduct report; *Tipton v. Barton,* 747 S.W.2d 325 (Mo.App.1988) (injunction) city attorney's itemized billing statements; *State ex rel. St. Louis*

*County v. Block,* 622 S.W.2d 367 (Mo.App.1981) (prohibition) records of bureau of internal affairs of county police department; *State ex rel. Gray v. Brigham,* 622 S.W.2d 734 (Mo.App.1981) (mandamus) applications for occupancy permits and all permits issued by City of Brentwood; *Wilson v. McNeal,* 575 S.W.2d 802 (Mo. App.1978) (injunction) report prepared by police department in conjunction with internal investigation into the death of a man while in police custody.

judgment case, not only those that might be thought to involve "delicate problems" whose solution is bound to have "far-reaching import."

Judgment reversed, and cause remanded to trial court for further proceedings in accordance with this opinion.