**Virgil TIPTON, et al., Plaintiffs–Respondents,**

v.

**Lee BARTON, Jr., et al., Defendants–Appellants.**

No. 54089.

Missouri Court of Appeals, Eastern District, Division Three.

March 22, 1988.

Kenneth Charles Brostron, Robert E. McWilliams, Jr., St. Louis, for defendants-appellants.

Robert B. Hoemeke, St. Louis, for plaintiffs-respondents.

KELLY, Judge.

The mayor, city coordinator and the individual members of the board of aldermen of the City of Wentzville appeal from the judgment of the trial court entered in favor of respondents Virgil Tipton, Ralph Dummit and the Pulitzer Publishing Company. Tipton and Dummit are reporters for the St. Louis Post Dispatch and are employed by the Pulitzer Publishing Company. Tipton, Dummit and the Pulitzer Publishing Company brought this suit for attorney's fees and for a mandatory injunction to compel the mayor, city coordinator, and members of the board of aldermen of Wentzville, Missouri to make available for public inspection and copying itemized billing statements prepared by Wentzville City Attorney Robert Wohler and submitted to the City of Wentzville for payment. We affirm.

From the stipulated facts submitted by the parties, the trial court could reasonably have found the following. In June of 1987, Tipton requested from Vi Skillman, a computer operator and city treasurer, itemized billing statements prepared by Wentzville City attorney Robert Wohler and submitted to the City of Wentzville for payment for the period of October 1985 through March 1987. Tipton and Dummit requested the billing statements in the course of preparing a series of newspaper articles about legal fees and other expenses paid by municipalities. Skillman advised Tipton that the documents he requested were in storage because of the remodeling at City Hall. Appellant Milton Roscoe, city coordinator, later told Dummit that the documents he and Tipton requested would not be given to them.

On July 8, 1987, Roscoe advised the Wentzville board of aldermen of the reporters' request to examine the itemized billing statements. The board of aldermen voted unanimously to close the billing statements and not to release them. On July 9, 1987, attorneys for respondents made a written demand for release of the billing statements.

On July 20, 1987, appellant Roscoe responded to respondents' written demand and informed respondents that the City of Wentzville Board of Aldermen had voted unanimously to deny the release of the billing statements. Appellant Roscoe did supply respondents with documents indicating the dollar totals requested by Wohler for each billing period. However, the description of the allocation of public funds to particular services rendered by Wohler was removed.

On August 12, 1987, respondents filed suit in the circuit court for St. Charles County. Respondents' motion for preliminary injunction was called and heard on October 2, 1987, at which time the circuit court set a briefing schedule and required the appellants to submit the billing statements under seal for in camera inspection.

On November 20, 1987, the circuit court granted the respondents' petition for a permanent injunction on the stipulated facts,

holding the billing statements are public records under the Open Meetings Act and must be made available for public inspection and copying. The circuit court also awarded respondents reasonable attorneys' fees in the amount of $750.00.

The subject billing statements have been submitted to our court under seal for in camera inspection. Appellants have labeled the entries included in the billing statements as falling within one of the exceptions enumerated in the Open Meetings Act. Appellants' characterization of the billing statements are as follows:

1. Real estate leasing, purchase or sale;
2. Personnel hiring, firing, disciplining or promotion;
3. Legal actions, causes of action or litigation.

The first column of each billing statement discloses the date of the transaction. The second column details in the most general terms the activity engaged in by the attorney. The third column discloses the charge for each service.

■ Appellants initially contend that the trial court erred in holding that appellant Roscoe, city coordinator of the City of Wentzville, is a "public governmental body" under the Missouri Open Meetings Act, §§ 610.010—610.030 RSMo 1986.

The Act defines a public governmental body to include:

Any legislative, administrative governmental entity created by the constitution or statutes of this state, by order or ordinance of any political subdivision or district, or by executive order, including any body, agency, board, bureau, council, commission, committee,.... of any political subdivision of the state, of any county or of any municipal government, ... any other legislative or administrative governmental deliberate body under the direction of three or more elected or appointed members having rule-making or quasi-judicial power, any committee appointed by or under the direction or authority of any of the above-named entities and which is authorized to report to any of the above-named entities....

The circuit court held that each of the appellants fall within this definition. On appeal, appellant's argue that determination is erroneous only with respect to City Coordinator Milton Roscoe.

The legal file includes Wentzville Ordinance No. 681 which establishes the position of the Wentzville city coordinator and sets forth his powers and duties. The relevant portion of the Ordinance reads as follows:

Section 5: The City Coordinator shall be the chief assistant to the Mayor and shall coordinate and generally supervise the operation of all departments of the City of Wentzville. In addition the City Coordinator shall:

a. Be the purchasing agent for the City of Wentzville and all purchases amounting to less than five hundred dollars ($500.00) shall be made under his direction and supervision, and all such purchases shall be made in accordance with purchasing rules and procedures approved by the Board of Aldermen;

b. Be the Budget Officer of the City of Wentzville and shall assemble estimates of the financial needs and resources of the City for each ensuing year, and prepare a program of activities within the financial power of the City, embodying in it a budget document with proper supporting schedules and an analysis to be proposed to the Mayor and Board of Aldermen for their final approval;

c. Make monthly reports to the Mayor and Board of Aldermen relative to the financial condition of the City;

d. Prepare and present an annual report of the City's affairs, including in such report a summary of reports of department heads and such other reports as the Mayor and Board of Aldermen may require;

e. Act as the personnel officer of the City and recommend an appropriate position classification system and pay plan to the Mayor and Board of Aldermen;

. . . . .

q. Prescribe such rules and regulations as instructed by the Mayor and the Board of Aldermen;

The concluding section of the ordinance stated it was effective upon its approval in December of 1978.

Appellants rely on *Tribune Publishing Company v. The Curators of the University of Missouri,* 661 S.W.2d 575 (Mo.App. 1983) to support their argument that City Coordinator Roscoe is not a governmental body because he does not have policy-making authority. Appellants argue that Roscoe's powers are "ministerial." We disagree.

In *Tribune,* the court construed an earlier definition of "public governmental body" which was amended in 1978 and again in 1982 to specifically include administrative or executive bodies. Unlike the current definition, it did not encompass administrative governmental entities.

In *MacLachlan v. McNary,* 684 S.W.2d 534 (Mo.App.1984), our court interpreted the amended definition of "public governmental body" within the Missouri Open Meetings Act. The respondents in *MacLachlan* argued that "the General Assembly intended that those entities which have the power to decide or formulate public policy were entities to be open to the sunshine of the press." *Id.* at 537. This court disagreed with respondents' limited interpretation and interpreted the 1982 amendment to Chapter 610 as follows:

> By enactment of the 1982 amendment to Chapter 610, it is apparent that the legislature intended to affect the entire administrative decision-making process, not just the formal act of voting for the formal execution of an official document. *It is unnecessary that an entity have binding authority for it to be subject to the Sunshine Law. It is within the meaning of the law if its determinations affect the public.*

*Id.* at 538 (emphasis added).

Roscoe's position as chief assistant to the mayor clearly encompasses making determinations which affect the public, in that the city coordinator supervises the operation of all the departments of the City of Wentzville. Roscoe prepares and presents annual reports of the city's affairs, he acts as a personnel officer of the city, and he prescribes such rules and regulations as instructed by the board of aldermen. We are satisfied that Roscoe is clearly a "public governmental body" within the meaning of the Open Meetings Act. Appellants' first point is denied.

■ Appellants next contend that the trial count erred in determining that the billing statements were "retained" under the Open Meetings Act by the mayor, the city coordinator and the members of the board of aldermen.

The word "retained" appears in the definition of the term "public record," in § 610.010(4) RSMo 1986 as follows:

> (4) "Public record," any record *retained by or of any public governmental body* including any report, survey, memorandum, or other document or study prepared and presented to the public governmental body by a consultant or other professional service paid for in whole or in part by public funds; ... (emphasis added).

Appellants concede that City Coordinator Roscoe retains the billing statements pursuant to Wentzville, Mo., Ordinance No. 681, Sec. n, enacted December 13, 1978, which requires Roscoe to "safely and properly keep all records and papers belonging to the City of Wentzville and entrusted to his care ..." The billing statements are submitted to and reviewed by Roscoe. Therefore, Roscoe physically retains the subject billing statements.

Moreover, we find that the mayor and members of the board of aldermen also retain the billing statements. It is the board of aldermen and the mayor that direct the city coordinator to keep all records belonging to the city. Therefore, the trial court properly found that the mayor, city coordinator and members of the board of aldermen each have legal control over the subject billing statements to retain them for purposes of the Open Meetings Act.

■ Appellants next contend that the itemized monthly billing statements prepared by City Attorney Robert Wohler and submitted to the City of Wentzville for payment are not public records under the

Missouri Open Meetings Act, § 610.010(4) RSMo 1986.

The Open Meetings Act requires that "all public records of public governmental bodies shall be open to the public for inspection and copying." § 610.011(2) RSMo 1986 (1987 Supp.).

We've already determined that the monthly billing statements are retained by a public governmental body. The billing statements also constitute public records under the second part of § 610.010(4) because they are "document[s] ... prepared and presented to the public governmental body by a consultant or other professional service paid for in whole or in part by public funds." § 610.010(4) RSMo 1986. Attorney Wohler provides professional services to the City of Wentzville. Wohler prepares monthly itemized billing statements and presents them to the city for payment. He is then paid with public funds. Therefore, the itemized billing statements submitted by the city attorney for payment are public records under § 610.010(4) RSMo 1986.

We next must address whether the subject billing statements fall within an exception to the requirement of disclosure of public records under the Open Meetings Act.[1] We have reviewed the billing statements which have been submitted to our court under seal for in camera inspection. Appellants characterize entries such as "study security guard documents," "check on drug inquiries on police physicals," and "Review ordinance on city coordinator" as personal notes of the attorney which fall within an enumerated exception under § 610.025 RSMo 1986. These entries on their face do not contain privileged information which if disclosed would be detrimental to the City of Wentzville.

Appellants contend the subject billing statements:

1. pertain to legal actions, causes of action, litigation involving a public governmental body (§ 610.025(1));

2. pertain to leasing, purchase or sale of real estate where public knowledge of the transaction might adversely affect the legal consideration therefor (§ 610.025(3)); and

3. relate to the hiring, firing, disciplining or promotion of personnel of a public governmental body (§ 610.-025(3)).

We address each contention in turn.

■ We note at the outset that the exceptions set forth in § 610.025 RSMo 1986 are to be narrowly construed. *MacLachlan v. McNary*, 684 S.W.2d 534, 537[2] (Mo.App.1984).

■ First, appellants argue that the subject billing statements pertain to legal actions, causes of actions, or litigation involving a public governmental body within the meaning of § 610.025(1) RSMo 1986. Respondents are not requesting access to legal files, memoranda or work product of the Wentzville city attorney. Rather, respondents request to examine billing statements which merely identify the allocation of public funds to particular services rendered by Wohler. At issue are itemized billing statements in the possession of the city coordinator, which provide only general descriptions of legal services rendered, not analytical work product. We find that the subject billing statements do not pertain to legal actions, causes of actions, or

---

1. Section 610.025 RSMo 1986, authorizes closed meetings, records and votes of public governmental bodies, and provides in pertinent part that:

    1. Any meeting, record or vote pertaining to legal actions, causes of action, or litigation involving a public governmental body, leasing, purchase or sale of real estate where public knowledge of the transaction might adversely affect the legal consideration therefor may be a closed meeting, closed record or closed vote.

....

    3. Any ..., meetings relating to the hiring, firing, disciplining or promotion of personnel of a public governmental body, and its representatives in preparation for negotiations, with employee groups, all work product developed by the governmental body or its representatives in preparation for negotiations with employee groups, ... may be a closed meeting, closed record, or closed vote.

litigation within the meaning of § 610.025(1) RSMo 1986.

■ Second, appellants assert the billing statements "pertain to the leasing, purchase or sale of real estate where public knowledge of the transaction might adversely affect the legal consideration therefor" within the meaning of § 610.025(1) RSMo 1986. Respondents' request is limited to the billing statements which would describe any legal services rendered by Wohler. These billing statements refer to real estate the city might be leasing, buying or selling. However, the actual terms of any real estate transaction or a negotiating position of the city is not disclosed in the billing statements submitted by Wohler, and a mere reference to a real estate transaction is not sufficient to trigger application of § 610.025(3) RSMo 1986.

■ Finally, appellants contend that the billing statements "relate to the hiring, firing, disciplining or promotion of personnel of a public governmental body" within the meaning of § 610.025(3) RSMo 1986. To merely identify personnel matters within a description of the legal services rendered is not sufficient to fall within the purview of § 610.025(3) RSMo 1986. Moreover, the names of individuals who are included in the billing statements that relate to the hiring, firing, disciplining or promotion of personnel of a public governmental body could be deleted, leaving the description of the legal services rendered by Wohler intact. Appellants' argument that the city attorney's billing statements disclose privileged information under § 610.025(3) is without merit.

■ Respondents also direct our attention to the failure of appellants to comply with the procedural requirements for closing public records. Assuming arguendo that the billing statements fall within one of the exceptions enumerated in the Open Meetings Act, respondents argue that they are still entitled to inspect the subject billing statements. We agree.

The records were not closed until nearly a month after the respondents initially requested them. The public governmental body with control over the records must affirmatively vote to close the records at a public meeting, with notice and a reference to the exception upon which the body relies in closing the record. Section 610.025(5) RSMo 1986 provides that:

Before any ... records ... may be a ... closed record, ... the governmental body shall vote on the question of making the ... records ... closed and such question shall receive an affirmative public vote of a majority of a quorum of the body. [T]he reason for holding the closed ... record ... by reference to a specific reason under the provisions of this section shall be announced publicly at an open session and entered into the minutes. Notice of the closed ... record ... shall also be given as provided in § 610.020.

Section 610.020(6) provides that:

All public governmental bodies proposing to hold a closed ... record ... shall give notice to the time, date and place of such meeting and the reason for holding the closed session by reference to the specific exception allowed under the provisions of § 610.025.

Here, the stipulated facts submitted by both parties indicate that the board of aldermen voted to close the billing statements on July 8, 1987. Respondents requested the records in June of 1987. Since the records were not closed until nearly a month after the respondents initially requested them, the records shall be made available for public inspection.

Respondents advance a constitutional argument in support of its contention that the billing statements submitted to the city of Wentzville must be made available for public inspection. Respondents argue that they are entitled access to the billing records as guaranteed by the First and Fourteenth Amendments of the United States Constitution.

In light of our determination that the subject billing statements do not fall within an exception set forth in the Open Meetings Act, we need not address the constitutional issues raised by respondents.

■ Appellant next contends that the trial court erred in determining that the billing statements were not privileged commu-

nications within the attorney-client or work product privilege.

Appellants rely on *State ex rel. Great American Insurance Company v. Smith,* 574 S.W.2d 379 (Mo. banc 1978), and direct our attention to the following language:

When a client goes to an attorney and asks him to represent him on a claim which he believes he has against someone or which is being asserted against him, even if he as yet has no knowledge or information about the claim, subsequent communications by the attorney to the client should be privileged. Some of the advice given by the attorney may be based on information obtained from sources other than the client. Some of what the attorney says will not actually be advice as to a course of conduct to be followed. Part may be an analysis of what is known to date of the situation. Part may be a discussion of additional avenues to be pursued. *Part may be keeping the client advised of things done or opinions formed to date. All of these communications, not just the advice, are essential elements of attorney-client consultation. All should be protected.* (emphasis added).

*Id.* at 384–385[3, 4].

Our in camera review discloses that the billing statements merely *identify* attorney Wohler's preparation of pleadings, phone calls, meetings, and discussions with other attorneys or individuals. The subject billing statements do not include *detailed* entries which advise, analyze or discuss privileged communications. The mere fact that City Attorney Wohler prepared the billing statements does not render those statements confidential. The billing statements are extraneous to Wohler's legal advice or work product. We find that the billing statements are neither privileged communications nor work product and do not fall within the attorney-client privilege.

■ Appellants' final contention is that the trial court erred in awarding respondents attorneys' fees under the Missouri Open Meetings Act.

The Open Meetings Act authorizes the award of costs and reasonable attorneys' fees where the court finds a public govern-

mental body has purposely violated the Act. § 610.027(3) RSMo 1986. The finding of a purposeful violation must be supported by "a preponderance of the evidence," or evidence which as a whole shows the fact to be proved to be more probable than not. *See Fujita v. Jeffries,* 714 S.W.2d 202, 206[4] (Mo.App.1986).

In the case at bar, the trial judge had before him the Joint Stipulation of Facts, and was acquainted with the issues and intricacies of the proceedings. The trial court is an expert on the issue of attorneys' fees and is given wide latitude in the allocation of fees and costs. *Waldron v. Ragland,* 716 S.W.2d 861, 863[3] (Mo.App. 1986); *Mills v. Mills,* 663 S.W.2d 369, 374[12] (Mo.App.1983). The evidence in this case supports a finding of a purposeful violation of the Open Meetings Act, and an award of attorneys' fees.

Accordingly, respondents are entitled to reasonable attorneys' fees in the amount of $750.00. Additionally, respondents should be allowed to examine the subject billing statements. The judgment is affirmed.

KAROHL, P.J., and SMITH, J., concur.